## NEW AMSTERDAM CASUALTY CO. v. F. REDONDO & CO.

### No. 11070.

Court of Civil Appeals of Texas. San Antonio.

Jan. 7, 1942.

Rehearing Denied Feb. 4, 1942.

Park Street and W. W. Fowlkes, both of San Antonio, and John E. Lyle, Jr., of Corpus Christi, for appellant.

Mobley, Roberts & Lockett, of Corpus Christi, for appellee.

SMITH, Chief Justice.

V. H. Gehlbach constructed certain improvements for Corpus Christi Independent School District under a contract the performance of which was secured by a bond obligating him to perform the work and "promptly make payments to all persons supplying him with labor and material in the prosecution of the work provided for in the contract." New Amsterdam Casualty Company was surety on the bond, with Gehlbach as principal.

At the completion of the work the School District had on hand the balance due Gehl-

bach on his contract, amounting to $9,346, which it withheld pending assurance that Gehlbach had paid the claims of all his subcontractors, among whom was F. Redondo and Company, with a claim for $1,-995.

In order to secure the balance due upon his contract, Gehlbach procured receipts of payment and releases of their claims from most of his subcontractors, including Redondo and Company, upon delivery of his checks in their favor for the amounts of their respective claims.

The checks Gehlbach had given in consideration of those releases were cleared through the usual banking channels, but payment thereon was refused on presentation to the bank upon which they were drawn, because of "insufficient funds."

In the meantime, however, Gehlbach had presented the receipts and releases to the School Board, together with his affidavit that all claims of those subcontractors had been fully paid. Upon that showing and in reliance thereon the School District paid Gehlbach the sum of $6,524, and Gehlbach and certain materialmen jointly, $1,702, retaining the balance of the funds on hand, $1,033, for distribution to unreleased subcontractors. It is conceded that the surety had no knowledge of any of these transactions.

By these palpable frauds Gehlbach swindled the subcontractors out of the amounts of their claims, and appropriated the same to his own uses. Redondo and Company was one of the victims, and by releasing Gehlbach it not only lost the security for its claim, but by the same act deprived the surety of its security as well.

The School District filed this action in the form of interpleader, and, tendering the balance ($1,033) owing by it to Gehlbach, prayed that it be properly distributed among Gehlbach's unpaid subcontractors. Gehlbach and the Surety Company were impleaded. F. Redondo and Company filed its cross-action and sought recovery against Gehlbach as principal and New Amsterdam Casualty Company, as surety, for the amount of its claim of $1,995. Redondo and Company recovered as prayed for and the Casualty Company has appealed.

■ It seems obvious that under plain rules of both law and equity the appellee, by its own acts, cut itself off from any recourse upon the surety on the contractor's bond.

It is true that appellee was induced to release the contractor by the latter's fraud, and that on that account the release was unenforcible as between appellee and the contractor. But as the contractee, the School District, had no notice of the vice in the release, it was authorized and it was its duty, upon tender of the receipt and release, to pay the contractor the amount owing to him under the building contract, and did so.

By this process appellee was the victim of its own gullibility. Its claim was fully protected by the fund which the District had withheld from the contractor for the specific purpose of securing payment of appellee's claim. The District would not disburse the fund until assured that appellee's claim had been satisfied. Appellee executed and put in circulation its receipt of payment of its claim by the contractor and its release in full of the latter's obligation to it. When the contractor presented this receipt and release the District paid over the amount to the contractor. It is true as a matter of course that appellee was thenceforth estopped from asserting to the School District that its receipt and release had been procured from it by the after-discovered fraud of the contractor. This is elemental.

■ The same rule is applicable, under the case made, to the surety on the contractor's bond. It is conceded the surety had no knowledge of the transactions between the contractor and appellee whereby the latter executed and floated the receipt of payment of its claim against the contractor and its release of the latter from all obligation to it. Nor had the surety any knowledge of the uses to which the receipt and release had been put, whereby the School District had paid over to the contractor the fund held by it as security for appellee's claim. That fund operated to indemnify the surety against the default of its principal, the contractor, and the surety was entitled to be subrogated to the rights of appellee to said fund.

■ The result is that when appellee released his claim against the principal on the bond and thereby dissipated the security which protected the surety the latter was exonerated of all liability upon appellee's claim. Arants Guar. & Surety, p. 188, § 52; 39 Tex.Jur. p. 962, § 54; Ætna Cas. & Surety Co. v. Russell, Tex.Com. App., 24 S.W.2d 385. As stated in Tex. Jur:

"* * * Stated in another way, if a creditor or obligee, without the consent of the surety, has parted with or *rendered unavailable* any security or fund which he had a right to apply in satisfaction of the debt, the surety is exonerated to the extent of the value of such security or to the extent of the impairment of its value." (Emphasis ours.)

The judgment in favor of appellee against appellant, Casualty Company, will be reversed and judgment here rendered that appellee take nothing as against said appellant; in all other respects the judgment will be affirmed.

Reversed and rendered in part; affirmed in part.