## PRICE v. STEVES.

### No. 11351.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 3, 1943.

Johns, McCampbell & Moller, of Corpus Christi, for appellant.

Bobbitt, Street & Fowlkes, of San Antonio, for appellee.

NORVELL, Justice.

Upon consideration of appellant's motion for rehearing, our former order will be set aside and the judgment appealed from will be reformed, as herein after indicated, and as reformed will be affirmed. Our original opinion is withdrawn and the following substituted therefor:

V. H. Gehlbach secured a contract from the Corpus Christi Independent School District to construct an addition to the Corpus Christi high school. A bond securing the performance of the contract by Gehlbach was executed by the New Amsterdam Casualty Company. Appellant, Tom Price, was president and general manager of the Pelican Lumber Company of Corpus Christi, a corporation. Appellee, Albert Steves, Jr., was president of the Steves Sash and Door Company of San Antonio, also a corporation, which maintained a place of business in Corpus Christi.

The New Amsterdam Casualty Company demanded and secured two separate indem-

nity agreements, one signed by Price, individually, and the other by Steves, individually, as a condition precedent to that company's executing a performance bond for Gehlbach.

Steves, through the Corpus Christi manager of the Steves Sash and Door Company, requested of Price and secured a letter purporting to set out the agreement between Steves and Price relating to the Gehlbach transaction. This letter reads as follows: .

> "Corpus Christi, Texas
> "July 8, 1938

"Mr. Albert Steves, Jr.,
"San Antonio, Texas.

"Dear Sir:

"At your Mr. Johnston's request, I wish to set forth in writing my understanding of our joint liability with regard to the indemnifying agreement signed by you and me, concerning the V. H. Gehlbach High School Addition job.

"I signed this agreement with the understanding that any loss occasioned by Mr. Gehlbach's failure to complete the project for his contract price, was to be paid and such loss to be divided equally between yourself and me.

"Also I understand Mr. Gehlbach requires a maximum loan of Five Thousand Dollars, which is to be arranged with the Corpus Christi National Bank, to meet payrolls, etc. Such loans are to be paid in full by Mr. Gehlbach, upon receipt of payment of his regular monthly estimates, and renewed as the work progresses.

"It is my understanding I am liable with you on an equal basis, to the amount of this loan.

> "With best personal regards,
> "Yours truly,
> "Tom Price."

When the work upon the high school addition was completed, the school district had on hand approximately $9,346, which it withheld from Gehlbach pending proof by him that subcontractors and materialmen had been paid. On or about November 18, 1938, the Steves Sash and Door Company and Alamo Iron Works, among other creditors of Gehlbach, executed releases or receipts of payment to Gehlbach.

By obtaining these releases, as well as those of certain other creditors, Gehlbach was enabled to withdraw from the school district the sum of $6,524. It however appears that the accounts of Steves Sash and Door Company and Alamo Iron Works, as well as others, were not actually paid. It seems that Alamo Iron Works was unwilling to issue a receipt upon Gehlbach's check and did not do so until payment thereof was orally guaranteed by Albert Steves, Jr.

The school district had on hand $1,033, after it had paid out $6,524 on the receipts above mentioned. This sum was deposited into court in connection with an interpleader suit filed by the school district. New Amsterdam Casualty Company was impleaded therein. Price and Steves, because of their indemnity agreements with the surety company, employed attorneys to represent New Amsterdam Casualty Company in this litigation. The Pelican Lumber Company, by James C. Martin, its trustee in bankruptcy, Steves Sash and Door Company, and Alamo Iron Works, were all parties to the proceedings. The trustee in bankruptcy for Pelican Lumber Company, discontinued prosecution of its suit and claim. Steves Sash and Door Company filed a disclaimer and Alamo Iron Works was awarded a recovery of $2,523 against Gehlbach, but was not allowed a recovery against the Surety Company. A payment of $133.50 out of the $1,033 deposited into court was eventually paid to Alamo Iron Works, in accordance with the terms of this judgment.

New Amsterdam Casualty Company appealed from that part of the judgment which awarded a recovery against the surety and in favor of one of the claimants, F. Redondo & Company. This court rendered judgment that F. Redondo & Company take nothing against said surety company. 158 S.W.2d 334. The Supreme Court refused an application for writ of error.

Appellee, Albert Steves, Jr., paid off the claims of the Steves Sash and Door Company and Alamo Iron Works and in this action sought, among other things, to recover of Price one-half of said amounts paid.

It also appears that on October 14, 1938, V. H. Gehlbach, Albert Steves, Jr., and Tom Price, executed a $4,500 note to the State National Bank of Corpus Christi. It is inferable that this note was executed in conformity with the third and fourth paragraphs of Price's letter to Steves, although the letter mentions the Corpus Christi National Bank rather than the State National Bank of Corpus Christi. This

note was paid off on November 22, 1938, about the time Gehlbach received his last estimate from the school district upon the Corpus Christi high school addition job. On May 15, 1939, Gehlbach and Steves executed a note for $3,000, payable to State National Bank of Corpus Christi. This note was apparently executed in order to provide Gehlbach with funds for use upon a construction job which Gehlbach had in Port Lavaca. However, some $2,052.67, derived from this loan, was traced by Steves as having been used by Gehlbach in discharging certain bills and obligations incurred in connection with the Corpus Christi high school job. Steves sought a recovery of one-half of this amount from Price.

By way of recoupment, Price attempted to offset the claim of the Pelican Lumber Company against Gehlbach, which he, Price, had purchased from the trustee in bankruptcy.

Steves further sought to recover one-half the amount paid for attorney's fees incurred in the F. Redondo-New Amsterdam Casualty Company litigation. Upon the trial Price admitted his liability upon this item.

The trial court, after a hearing without a jury, charged Price with liability for one-half of the accounts of Steves Sash and Door Company, Alamo Iron Works (less the credit received from Corpus Christi Independent School District in the legal proceedings above mentioned) and the amount paid out of the proceeds of the note of May 5, 1939, executed by Gehlbach and Steves, which was expended upon the Corpus Christi high school job.

This case turns upon the construction of the letter of July 8, 1938.

Appellee pleaded that "as a result of the default of the said contractor (Gehlbach), and in accordance with his said indemnity contract, he (Steves) was forced to indemnify and protect the surety (New Amsterdam Casualty Company) and accordingly to pay for the surety, or in place of the surety, the amounts set forth in the statement attached hereto as Exhibit 'B'," which included the Steves Sash and Door Company, Alamo Iron Works and State National Bank of Corpus Christi items.

We have examined the entire statement of facts and there seems to be no evidence that the surety, New Amsterdam Casualty Company, became liable upon any of these items. The performance bond executed by the surety company was not introduced in evidence, and seemingly the claims of Steves Sash and Door Company and Alamo Iron Works (as well as that of the Pelican Lumber Company) were similar in legal situation to that of the claim of F. Redondo and Company, insofar as the surety company was concerned. See New Amsterdam Casualty Company v. F. Redondo & Co., Tex.Civ.App., 158 S.W.2d 334.

The trial court, however, construed Price's letter as assuming a much broader liability than one restricted to such claims as Price would be liable for under his indemnity agreement with the New Amsterdam Casualty Company. Appellee seeks to sustain that position here. It is contended that the phrase "such loss to be divided equally between yourself and me," should be construed as meaning that if Gehlbach sustained a loss then Price and Steves were equally liable therefor, regardless of whether the surety company was liable for such loss or not.

We think the letter sets forth two separate undertakings on the part of Price. The first undertaking is contained in paragraphs one and two of the letter and relates to the indemnity agreements signed by Price and Steves. The first paragraph states "my (Price's) understanding of our joint liability with regard to the indemnifying agreement." In view of this phrase, we do not believe it can be said that Price intended to extend his liability beyond that which he had theretofore assumed by having executed an indemnity agreement with New Amsterdam Casualty Company. Price did agree, however, that upon losses for which he or Steves would be liable under the indemnity agreements, he and Steves would be equally liable.

Under this construction of the first two paragraphs of the letter Price is not liable to Steves upon either the Steves Sash and Door Company, Alamo Iron Works, or State National Bank of Corpus Christi items, as it was not shown that the surety company ever became liable therefor, or that either Steves or Price became liable to the surety company under their indemnity agreements.

The third and fourth paragraphs of the letter relate to a bank loan. As above pointed out, the State National Bank of Corpus Christi item is based upon a loan secured on May 15, 1939, after the final estimate on the Corpus Christi high school

addition had been paid. This note simply did not come within the terms of paragraphs three and four of the letter. It was not a loan arranged to meet payments on the Corpus Christi job, nor was it a renewal of a loan made for that purpose during the progress of the work.

In our opinion the trial court erred in allowing appellee a recovery against Price upon any of the items referred to, except that relating to attorney's fees above mentioned. The claim of Pelican Lumber Company was pleaded by Price strictly as a recoupment and should have therefore been disallowed. The claim is in about the same status as the claims of Steves Sash and Door Company and Alamo Iron Works.

The judgment of the court below will be reformed as to eliminate all recovery by appellee against appellant, save and except a recovery of $575, as and for one-half of attorney's fees expended in connection with the case of New Amsterdam Casualty Company against F. Redondo Company. Costs of appeal are taxed against appellee.

Judgment reformed and, as reformed, affirmed.